IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA,
                    Plaintiff,

                                        Criminal Action
          vs                            No. 16-235

GREGORY BROWN,
                    Defendant.


_____


          Transcript of suppression/dismissal motion
proceedings held on December 18th, 2019, United States District
Court, Pittsburgh, Pennsylvania, before the Honorable David S.
Cercone, U.S. District Court Judge.


APPEARANCES:

For the Government:          Shaun E. Sweeney, Esq.
                             Rebecca Walker, Esq.
                             United States Attorney's Office
                             700 Grant Street, Suite 4000
                             Pittsburgh, PA 15219
                             shaun.sweeney@usdoj.gov


For the Defendant:           Michael J. Novara, Esq.
                             Samantha Stern, Esq.
                             Federal Public Defender's Office
                             1001 Liberty Avenue
                             1500 Liberty Center
                             Pittsburgh, PA 15222-3716
                             Michael_Novara@fd.org
                             Samantha_Stern@fd.org


Court Reporter:              Shirley Ann Hall, RDR, CRR
                             6260 U.S. Courthouse
                             Pittsburgh, PA 15219
                             shirleyhall_uscra@yahoo.com


Proceedings recorded by digital stenography; transcript
produced by computer-aided transcription.

```
1                        P R O C E E D I N G S
2           (In open court.)
3                THE COURT:  Good morning.  Please be seated.
4                The court's convened in the case of United States
5     versus Brown at CR-16-235.  This is the time set for argument
6     on a part of the defense motion to dismiss.  The issue the
7     Court would like to hear argued is whether or not the Bartkus
8     exception to the dual sovereignty rule applies in this case.
9     Okay?
10               When we last met, we weren't sure that the dual
11    sovereignty rule even still existed.  The Supreme Court since
12    then has ruled; we know it does exist.  The question here is
13    whether or not what happened in state court had such
14    involvement from the Federal Government to basically render the
15    state prosecution a de facto federal prosecution.
16               The language of some of the cases that have dealt with
17    this issue say that the exception, to the extent that it
18    exists, is limited to the extraordinary situation in which one
19    sovereign is so dominated, controlled or manipulated by the
20    actions of the other that it does not act of its own volition.
21    There's talk of the state prosecution being a sham prosecution
22    for the Federal Government.  So that's the issue that I would
23    like to hear argument on here today.
24               Who is going to argue on behalf of the defense?
25               MR. NOVARA:  Thank you, Your Honor.  Michael Novara
```

1   and Samantha Stern from the Federal Public Defender's Office,

2   here with David Fawcett from Reed Smith, representing

3   Mr. Brown.  And Samantha Stern will be arguing this issue

4   today.

5              MS. STERN:  Good morning, Your Honor.

6              THE COURT:  Good morning.  You may proceed.

7              MS. STERN:  Your Honor, since the last hearing date

8   there's actually been some evidentiary developments, so I would

9   like to first present some evidence on this question before

10  proceeding to argument.

11             THE COURT:  All right.  It does relate to this issue,

12  though.

13             MS. STERN:  Yes, Your Honor.  I have a brief

14  presentation, but solely on facts relevant to the Bartkus

15  exception that we're discussing.

16             THE COURT:  Fine.

17             MS. STERN:  If Your Honor will indulge me for just one

18  moment, though, I have a brief housekeeping matter from the

19  last hearing date.

20             As Your Honor will recall, we presented evidence and

21  argument concerning the broader issues in the motion to

22  dismiss, and I just want to make sure that we have entered as

23  exhibits matters that were discussed previously.

24             So specifically, Your Honor, in our motion to dismiss

25  we have attached Exhibits A through R.  At no point was there a

1   formal motion for admission of those exhibits.  I'm sure we
2   would disagree as to the relevance of those documents.
3   However, hearsay is admissible in this context.  I'd move for
4   admission of those exhibits so they can be considered by the
5   Court in determining the issues on the motion to dismiss.
6           THE COURT:  Any objection?
7           MR. SWEENEY:  No, Your Honor.
8           THE COURT:  We'll admit them.
9           MS. STERN:  And, second, Your Honor, the transcripts
10  from prior proceedings in this matter.  Again, I understand
11  there's disagreement as to the relevance and weight that those
12  transcripts should be afforded; however, we previously provided
13  paper copies of the transcripts from the PCRA proceedings and
14  the nol pros hearings in state court.  We would like to provide
15  a copy of the 1997 trial transcripts in their complete form to
16  the Court by disk.  And so I would move for admission of the
17  trial transcripts, specifically; that would be Exhibit S.  And
18  then the other transcripts that have been previously provided
19  to the Court -- we could submit that the PCRA hearing
20  transcript is Exhibit T and the nol pros hearing is Exhibit U.
21          THE COURT:  I don't see the harm in admitting them.
22          Do you?
23          MR. SWEENEY:  Your Honor, the only concern that we
24  have is that these transcripts are so voluminous, if we're
25  talking about the issues raised in the motion to dismiss and

1    specifically the Bartkus exception, there's just so much more

2    information beyond what is relevant to that.  At the same time,

3    what I was going to propose to Your Honor is that the

4    parties -- if this is going to be part of the record, all these

5    transcripts, that the parties be given an opportunity just

6    within the next, say, 30 days to submit proposed findings of

7    fact and conclusions of law with specific citations to these

8    transcripts.  Because, if not, and the Court is -- finds itself

9    having to read hundred and hundreds and hundreds of pages, that

10   could delay things and involve the Court looking at things that

11   really aren't relevant, even by the parties' own agreement as

12   to what the Bartkus exception is.

13            So with that all being said, I don't have an objection

14   to that; but I would just request that if the Court is going to

15   take all of this information in, that we be given an

16   opportunity to pinpoint for the Court the aspects of these

17   exhibits that really are important to resolving the Bartkus

18   issue.

19            THE COURT:  I think that would be very helpful to the

20   Court instead of having all of this -- all of these transcripts

21   just entered into the record.

22            Do you agree?

23            MS. STERN:  No objection to post-hearing briefing,

24   Your Honor.  We're only making them available in their complete

25   form so that the Court has them available as a reference as we

1    cite various portions of the record and different parts of the
2    pleadings submitted in this case.  So I'll hand those up at
3    this time.
4            THE COURT:  So the Court will agree with the
5    Government and ask that the parties -- how much time did you
6    say?
7            MR. SWEENEY:  We would just ask for 30 days,
8    Your Honor.
9            THE COURT:  Thirty days to submit post-argument
10   briefing; and you also suggested that there be findings of fact
11   and conclusions of law?
12           MR. SWEENEY:  Yes, Your Honor.
13           THE COURT:  So ordered.
14           MS. STERN:  And that concludes my housekeeping
15   requests for Your Honor.  Thank you for indulging.
16           I'll now begin presenting what I believe -- what we
17   believe are the relevant facts for Your Honor to consider in
18   deciding the sole sovereignty question; and to that end I'm
19   going to hand up a couple of different things.  I have what are
20   premarked as Exhibits AA through FF.  I'm going to just provide
21   two copies to the Court at this time which I'll be referencing
22   throughout my presentation.  I also have, Your Honor, a
23   demonstrative exhibit -- it's a timeline -- simply as a
24   reference for the Court.  I'm handing up two copies.
25           THE COURT:  All right.

1          MS. STERN:  And I don't believe the Government has an

2     objection to the admission of the exhibits I have just handed

3     up, but I'll make reference to them as we go and --

4          MR. SWEENEY:  That's accurate, Your Honor, we don't

5     object.

6          THE COURT:  Okay.

7          MS. STERN:  So, Your Honor, I know you're -- there was

8     quite a bit of presentation at the last hearing on the history

9     of this case.  I'm not going to go through, you know, every

10    aspect of the history of this case.  I'd just like to hit on

11    the points that I think are relevant for this question before

12    Your Honor.

13         THE COURT:  Right.

14         MS. STERN:  And so I will make reference to this

15    timeline.  However, that hearing was now two years ago, so I do

16    apologize if I'm covering ground that is already known to the

17    Court here.

18         Again, through the span of time beginning in 1995

19    through 1996, Your Honor, as you're aware, state and federal

20    agencies led by the federal agency, the ATF, conducted

21    investigation of the fire at the Bricelyn Street home.  In 1995

22    it was agreed between the US Attorney's Office and the

23    Allegheny County District Attorney that the case would be

24    prosecuted in state court.

25         Your Honor, as evidence of that agreement, I've

1    submitted Defense Exhibit AA, which is a press release issued

2    by then US Attorney David Hickton on November 4th, 2016.  This

3    was the time of the federal indictment in this case.  However,

4    it makes reference to the prior decision -- the prior joint

5    decision to prosecute this case in state court, and I'll refer

6    to -- Your Honor to the second paragraph in that press release

7    that says:  Federal and local investigators and prosecutors

8    have worked cooperatively since the inception of the

9    investigation of the -- after the fire occurred in 1995.  Even

10   though jurisdiction existed in both state and Federal Court, it

11   was agreed between the Allegheny County District Attorney's

12   Office and the United States Attorney's Office that the case

13   would originally be brought in state court and a joint

14   prosecution team from both offices would prosecute the case.

15           Sometime in 1995 or 1996 -- it's not clear, totally

16   clear to the defense -- there was an agreement between these

17   offices that Assistant United States Shaun Sweeney would be the

18   attorney cross-designated to the state matter and that he would

19   co-prosecute that case with then Assistant District Attorney

20   Mark Clark.  Fast forward --

21           THE COURT:  With who?

22           MS. STERN:  Mark Clark.

23           THE COURT:  Who was he, the Assistant District

24   Attorney?

25           MS. STERN:  The Assistant District Attorney then on

1    the state matter.  In 1997, as Your Honor will recall, this

2    case did proceed to trial in state court.  I won't get into too

3    much of the details about who did what in the course of that

4    trial.  It's outlined in that timeline before Your Honor.  But

5    suffice it to say, Your Honor, these two attorneys very much

6    shared the load.

7            Significantly as well, ATF served -- agents served as

8    lead prosecutors -- lead science experts in this matter.  They

9    contributed quite a bit of resources to this state prosecution.

10   They also created a reward fund, which is also significant just

11   considering how many federal resources were brought to bear in

12   that original state court trial.

13           I won't discuss the post-conviction litigation too,

14   too much.  I don't think it's as relevant, necessarily, for

15   this question that Your Honor is concerned with today.

16   However, suffice it to say federal and state lawyers were

17   involved in those post-conviction proceedings.  Federal and

18   state agents were involved as witnesses in those proceedings.

19   And that litigation, as Your Honor is aware, ultimately

20   resulted in the vacatur of Mr. Brown's state court conviction.

21   And that was based on a finding by the state court judge of

22   misconduct by both state and federal actors there.  Those

23   charges were then reinstated and pending in state court.

24           And now we are brought to 2016, Your Honor.  A few

25   things were going on during this time period.  There were

1    efforts by the prosecution to have the state court judge who

2    was presiding in those PCRA proceedings recuse in that case.

3    In addition, a motion was made to have that case dismissed on

4    double jeopardy grounds.  At that point, Your Honor -- and this

5    is some of the evidence that's become available to us since the

6    last hearing date -- a meeting took place on September 22nd,

7    2016, between members of the United States Attorney's Office

8    and representatives of the District Attorney's Office.

9    Specifically, Your Honor, I would refer you to Exhibit EE.

10           Our understanding, Your Honor, is that these are

11   handwritten notes from First Assistant United States Attorney

12   Steve Kaufman from a meeting between --

13           THE COURT:  Let me interrupt you for one minute.

14           MS. STERN:  Sure.

15           THE COURT:  How does what you're getting into right

16   now, the decision to -- that ultimately resulted in the case

17   being brought in Federal Court, how does that relate to the

18   state case, the trial, and what happened during -- that led up

19   to the Defendant's conviction?  Isn't that after the fact?

20   Doesn't that go more to a possible due process issue or

21   vindictive prosecution I think you call it in your motion?

22   Does that really go to a Bartkus issue?

23           MS. STERN:  Your Honor --

24           THE COURT:  In other words -- let me make it a little

25   bit clearer.  How does those events about this decision of what

1    happened -- I don't know if that's where you're going -- as to

2    how the case ended up in Federal Court -- I believe the case at

3    that time was back in the hands of Judge Williams.  How does

4    that go to whether or not the state case was, from the

5    inception, fundamentally a federal prosecution?

6              MS. STERN:  I would frame the issue slightly

7    differently than how Your Honor just framed it.  But I guess

8    stepping back for a moment, why is what's happening in this

9    span of time, 2016 'til today, relevant to this dual

10   sovereignty question?

11             If Your Honor looks to the case law that we've cited,

12   it clearly, in discussing both, you know, the history of those

13   cases, there's always a look back at the first proceeding and

14   there's always an examination of what happened in between and

15   what's happening today.  I think it's completely relevant

16   because the dual sovereignty doctrine is based on the concept

17   of federalism in our system.  And the Bartkus exception needs

18   to be applied in circumstances where that federalism system

19   upon which the dual sovereignty doctrine is based breaks down,

20   is no longer actually a reality; and that is exactly what's

21   happened in the history of this case.

22             So when Your Honor analyzes this issue, you have to

23   look to not only what occurred in state court, but what's now

24   happening in Federal Court today to ask whether the lines of

25   federalism have been so blurred throughout the history of these

1    proceedings so that applying the dual sovereignty doctrine, you

2    know, really employs a fiction which is not the realty.

3              So here we are arguing that the tools, specifically

4    the use of cross designation in this case, not only then, but

5    now today -- as Your Honor will note, seated before you is not

6    only an Assistant United States Attorney, but also a Deputy

7    District Attorney from the Allegheny County District Attorney's

8    Office who has been specially designated as a Special Assistant

9    United States Attorney in this case.

10             THE COURT:  Oh, I know.  But there's a lot of

11   authority out there that says that cross designation doesn't

12   destroy dual sovereignty.  It's not an uncommon occurrence.

13             MS. STERN:  What's uncommon, Your Honor --

14             THE COURT:  There are cases where there was exactly

15   what you're talking about, cross designations of either an

16   assistant state prosecutor helping or taking part in a federal

17   case or vice versa, and the courts held that that didn't

18   constitute a Bartkus exception.  You know that, right?

19             MS. STERN:  Your Honor, the Government cites not a

20   single case involving facts like ours where you have a

21   co-prosecution team of the original case by both state and

22   federal lawyers; and now in the second prosecution, now in

23   Federal Court because we've shifted forums, also a team

24   comprised of both a state and federal prosecutor.

25             THE COURT:  Zero plus zero still equals zero.  I mean

1  if they're allowed to do it, if the -- if the authority is that

2  cross designation doesn't break dual sovereignty, so now that

3  they're doing it again, so what?

4          MS. STERN:  Your Honor, we are getting into argument

5  now.  I'd ask that I can present some --

6          THE COURT:  Okay, I'm sorry.  I'm chomping at the bit.

7          MS. STERN:  Just to make the record, but I understand

8  Your Honor's concerns and I'll certainly address them in

9  argument; but I'm not aware of a blanket rule that approves of

10 the practice of cross designation and says that cross

11 designation doesn't matter for the question of determining

12 whether the dual sovereignty doctrine applies.

13         THE COURT:  I'm not saying it's not relevant.  I'm

14 just saying that every case that I've read that involved cross

15 designations of attorneys, you know, either a federal

16 prosecutor's going in and taking part in a state prosecution or

17 vice versa, I haven't read any cases where the courts have held

18 that that is an exception to Bartkus.  But -- but, of course,

19 that's just -- I understand that's just one fact in your

20 argument.

21         MS. STERN:  Yes, Your Honor, and I'm prepared to

22 address the existing case law on this whenever we discuss the

23 legal arguments.

24         THE COURT:  All right, sorry to interrupt you.

25         MS. STERN:  No, that's all right.

1          So, again, we're talking about a meeting that occurred

2    on September 22nd, 2016.  We have handwritten notes from

3    Steve Kaufman from that meeting.  It appears from those notes

4    that then United States Attorney, David Hickton, took part in

5    that meeting and also Stephen Zappala, the District --

6    Allegheny County District Attorney.  And most significantly,

7    Your Honor, I just draw your attention to five lines down --

8    and I apologize because these notes are somewhat open to

9    interpretation because the handwriting is not very neat.  But

10   they can correct me if they believe I'm wrong about what this

11   says.

12         But five lines down it indicates:  We will make Becky

13   a SAUSA, S-A-U-S-A.  So clearly there was discussion about

14   making Miss Walker -- giving Miss Walker a SAUSA designation

15   for purposes of the federal prosecution.  There's also

16   discussion about nol prosing the state charges and opting to

17   prosecute Mr. Brown in Federal Court.  Soon thereafter a

18   federal indictment was issued in this case.

19         I've also submitted as an exhibit a portion of the

20   Justice Manual -- that's Exhibit BB -- a portion of the Justice

21   Manual or the US Attorney's Manual that's referred to as the

22   Petite Policy.  I would like to move for admission of this

23   document into the record.

24         THE COURT:  It's admitted.

25         MS. STERN:  And specifically, Your Honor, I'm not

1   going to make reference to too many portions of this policy.

2   It's relevant because this policy generally applies to cases

3   where there is a prior federal/state prosecution and the

4   United States is considering whether to indict federally.

5   Specifically, three paragraphs down into that policy, it

6   indicates:  This policy precludes the initiation or

7   continuation of a federal prosecution following a prior state

8   or federal prosecution based on substantially the same acts or

9   transactions unless three substantive prerequisites are

10   satisfied.

11           First the matter must involve a substantial federal

12   interest.  Second, the prior prosecution must have left that

13   interest demonstrably unvindicated.  And, third, applying the

14   same test that's applicable to all federal prosecutions, the

15   Government must believe that the Defendant's conduct

16   constitutes a federal offense and that the admissible evidence

17   probably will be sufficient to obtain and sustain a conviction

18   by an unbiased trier of fact.

19           THE COURT:  But this isn't law.

20           MS. STERN:  No, Your Honor, but this policy is

21   relevant to the decision to prosecute Mr. Brown federally

22   following the state -- following the state proceedings in this

23   matter.  And I submit specifically it's the first of these

24   three prongs that's relevant here.  The United States would not

25   have pursued a federal indictment in this case had they not

1    thought that this case involved a substantial federal interest.

2    And that's the point for which I am offering the Petite Policy

3    into the record.

4          In addition, the Petite Policy establishes that when

5    there is a history of state prosecution, like in this case, the

6    prosecution must be approved by the appropriate Assistant

7    Attorney General.  And so authorization would have been

8    required in this case in order for the federal prosecution to

9    follow the state prosecution.

10          The Commonwealth then moved to nol pros the state

11    court case, as they had discussed in their September meeting.

12    At that hearing there was a discussion about the benefits that

13    federal prosecution would have for the Commonwealth -- for the

14    Commonwealth, not the Federal Government.  And that argument,

15    Your Honor, in the context of the nol pros hearing was made by

16    Deputy District Attorney Walker here.  And in her capacity as a

17    Deputy District Attorney, she made arguments about the benefits

18    to the Commonwealth of the federal prosecution.

19          I'm referring now to Defense Exhibit FF.  I'll refer

20    Your Honor to Page 10, if you'll indulge me.  This is

21    Miss Walker addressing the Court, quote:  To the extent that

22    the Court would consider the basis of a federal indictment, the

23    Commonwealth would note the following:  That this prosecution

24    has always been a joint effort.  Back from 1995 when the fire

25    first occurred and the three firefighters were killed, the ATF

1    was involved.  Fire -- excuse me, federal agencies were

2    involved based on federal jurisdiction.  There has always been

3    a recognition that the Federal Government had jurisdiction

4    concurrent with our jurisdiction at the time.  In 1997 when the

5    trial occurred, in 1996 when charges were filed, there was, as

6    Mr. Fawcett pointed out, discussion determining which is the

7    better sovereignty or which was the more appropriate

8    sovereignty to pursue the case.  And at that time it was

9    decided that state court was the more appropriate place to try

10   the case.

11            Circumstances have certainly changed since then.  In

12   1996, despite -- regardless of the age of the Defendant, the

13   Commonwealth had a mandatory life sentence.  We no longer have

14   that.  Our potential sentences are roughly the equivalent of

15   the state's term of years to life potential sentence.  In

16   addition, the federal prosecution provides the Commonwealth

17   with evidentiary benefits.  There are -- given that we are now

18   having only Commonwealth versus Gregory Brown and no longer

19   Darlene Buckner sitting here, there are evidentiary issues in

20   terms of the motive for this crime that we will be able to get

21   into evidence down in Federal Court that will likely be

22   precluded here.  So based on an evaluation of the evidence,

23   that is certainly a factor that was considered.

24            Additionally, as indicated, many of the witnesses were

25   from federal agencies.  The Commonwealth has been advised by

1   supervisors within the ATF that the ATF would fight our efforts
2   to subpoena several of their -- or certain of their agents
3   should we proceed to -- in state court.  Therefore, we will
4   lose those witnesses, which would greatly hinder our ability to
5   try the case, as would the loss of motive evidence.
6          Your Honor, this is significant because it is evidence
7   that the Commonwealth considers this federal prosecution their
8   prosecution, too.  And I think that is absolutely relevant for
9   Your Honor to consider in determining whether or not the
10  federalism system upon which our system is based has so broken
11  down that we have to apply an exception to the dual sovereignty
12  doctrine here.
13         In 2016, Your Honor, Miss Walker's office did follow
14  through on authorization of her to be a SAUSA for purposes of
15  this case only, which was also approved by the United States
16  Attorney's Office.  Since the last hearing in this matter, we
17  have obtained documentation regarding that SAUSA authorization
18  process.  I'm referring Your Honor now to Exhibit CC, which are
19  a portion of the SAUSA appointment-related documents that we
20  have obtained from the Government in this case.
21         Specifically referring you to an e-mail on the second
22  page, we got it from this -- that this process of initiating
23  the SAUSA appointment took place beginning in September of
24  2016.  She was ultimately approved as a SAUSA in October of
25  2016.  This was approved by both her office and the United

1    States Attorney, and the appointment has since been extended in

2    2017.

3            I would also point Your Honor to Defense Exhibit DD,

4    which is additional documentation we've received from the last

5    hearing date.  This, Your Honor, is correspondence between

6    Elizabeth DeLosa, who is an attorney with the Pennsylvania

7    Innocence Project and the Office of the District Attorney.

8    Your Honor might be wondering what relevance does this possibly

9    have in this case.  As Your Honor is aware --

10           THE COURT:  I kept my mouth quiet.

11           MS. STERN:  Ha-ha-ha.

12           Following the last hearing date, efforts were made by

13   the defense to obtain more information about the unique

14   relationship between these two offices throughout the life of

15   these proceedings.  Your Honor will recall litigation on our

16   motion to compel, seeking documents relating to the facts that

17   we considered to be relevant for the dual sovereignty doctrine.

18   Why were these cases prosecuted jointly then?  Why are they

19   being prosecuted jointly today?

20           We did obtain some documentation.  There was other

21   documentation upon which the Government was asserting

22   privilege.  We asked Your Honor to ultimately grant us a motion

23   to compel the production of those documents, and that was

24   ultimately denied.

25           So one course that was taken in the course of that

1    time period was an effort to get the state to provide some

2    documentation about just how common is this, this cross

3    designation by these offices in the form of a Pennsylvania

4    right-to-know request.  And so the first two pages of

5    Exhibit DD delineates Miss DeLosa's request for various

6    records -- primarily, Your Honor, any records pertaining to

7    cross designations from January 1990 until today.  Okay?  And

8    so that would include cross designations where an Assistant

9    District Attorney was authorized to be a Special Assistant

10   United States Attorney and, secondly, in situations where an

11   Assistant United States Attorney was designated to be a Special

12   Assistant District Attorney in a state court matter.

13          What's interesting about this is that ultimately the

14   District Attorney's Office only produced documentation

15   concerning one SAUSA designation in the last 30 years.  So I

16   think that is significant.  The case there is unrelated to this

17   case.  But certainly if this were a procedure that was employed

18   all the time, and we're talking specifically about --

19          THE COURT:  I know from one personal experience -- it

20   goes back to the 1950s.  My uncle, Judge William Cercone, who

21   served as precedent judge of the Pennsylvania Superior Court,

22   was an Assistant District Attorney and was named a special

23   federal prosecutor to prosecute Steve Nelson, the head of the

24   Communist party in western Pennsylvania.  So we know -- I know

25   it took place back in the 1950s anyway.

1          MS. STERN:  So there's another one.

2          Your Honor, and I think, you know, this is really

3    argument at this point, but just the point of entering this

4    document into evidence is just -- you know, we have seen so

5    many permutations now of these cross designations, okay?  We

6    have a special task force, we have -- you know, we regularly

7    see special Assistant United States Attorneys appearing in

8    Federal Court.  They take on, you know, really a full -- a full

9    Assistant United States Attorney caseload.  Sometimes they

10   ultimately become Assistant United States Attorneys, they

11   get -- they are hired by the office.

12          What we're talking about here and what is unique is

13   when someone employed by one prosecutor office gets

14   authorization to work on one case down the street.  And that's

15   because that case is considered to be very important to that

16   office and they want to maintain control over the case.  The

17   only way to maintain control is to have their attorney down the

18   street prosecuting the case.  And so that is what I am

19   submitting is rare.  Miss DeLosa -- the response to

20   Miss DeLosa's record request supports that.  I offer it into

21   evidence at this time as Exhibit DD.

22          So now we're here in Federal Court, Your Honor, and at

23   the Government's table we have Assistant United States Attorney

24   Shaun Sweeney and Deputy District Attorney, Special Assistant

25   United States Attorney Rebecca Walker co-prosecuting this case.

1    I'll just note for the record that at this last hearing, which

2    was now approximately two years ago, this Court inquired

3    about -- with Miss Walker regarding her role in this case.  And

4    she responded, quote:  I am a Deputy District Attorney employed

5    as a Deputy District Attorney with the Allegheny County

6    District Attorney's Office.  I have been granted the status of

7    a Special Assistant United States Attorney for purposes of this

8    case only.  That's on Page 6 of the transcript from our last

9    hearing day.

10           I'll save the rest for argument, Your Honor, but this

11   case is very unique in that you have joint federal and state

12   investigation, joint federal and state decisions regarding

13   forum, then and today, and, third, and finally, and I submit

14   most significantly, you have record involvement, co-prosecution

15   teams by both the federal and state prosecutors in both the

16   state and the Federal Court proceedings.  This is a truly

17   unique situation.

18           And I'll reserve the rest for argument.

19           THE COURT:  Who is going to argue?  Miss Walker?

20           MS. WALKER:  Good morning, Your Honor.

21           THE COURT:  Good morning.

22           MS. WALKER:  May it please the Court, Rebecca Walker

23   on behalf of the Government.  We don't have any additional

24   exhibits or evidence to introduce, so we would be prepared to

25   go to argument at this point.

1          I believe that it would be -- the defense would

2     proceed first as they have the burden of establishing prima

3     facie evidence that there was a violation of the dual

4     sovereignty here.

5               THE COURT:  Very well.

6               MS. STERN:  I'm happy to proceed first.

7               THE COURT:  Very well, thank you.

8          Before we hear argument, something that Miss Walker

9     just said made me think about something.  The standard of proof

10    in this case -- and I did read many cases dealing with this

11    Bartkus exception, and it didn't appear to be perfectly clear

12    to me what the actual standard of proof is.  So can we agree

13    that the standard is that the moving party, the defense, has

14    the burden to establish a prima facie case and then the burden

15    switches to the Government?  Is that agreed upon?

16         I mean I know there was authority that said exactly

17    that, but there was some other authority that it wasn't so

18    clear.  And then when the burden does switch to the Government,

19    what is that standard, preponderance of the evidence?

20              MS. WALKER:  I believe the authority -- unfortunately

21    the name of the case escapes me at this time, but I believe

22    we're talking about the same authority -- indicated that the

23    Government would then have the burden of persuasion.

24              THE COURT:  Very well.

25              MS. STERN:  We don't have an objection to that

1    framework.  That is consistent with some of the research I have

2    done in this case, although it's not a clearcut issue, as

3    Your Honor indicated.

4           THE COURT:  Yes, it wasn't.  That's exactly it.  And

5    that was an issue I was going to raise; but since we're pretty

6    much all on the same page, that's fine.  Okay.

7           MS. STERN:  Your Honor, as the District Court

8    recognized in the United States versus Belcher case, which the

9    parties have cited in their briefings, quote:  The unique

10   concept of dual sovereignty arises from the federal system

11   under which state governments and the Federal Government

12   co-exist.  This quote does not contemplate the uniting of these

13   awesome powers.

14          In Bartkus, Your Honor, the United States

15   Supreme Court envisioned a scenario where the concepts of

16   federalism were so blurred, so undermined that the application

17   of the dual sovereignty doctrine which normally applies in

18   double jeopardy analysis wouldn't apply.  This Court was not

19   dealing with such a situation in Bartkus, as that case involved

20   more of a classic successive prosecution scenario.  And the

21   Court recognized there that those prosecutions, investigations

22   were, quote, separately conducted.

23          Fast forward to the Belcher case, which I believe is

24   the most instructive for Your Honor in analyzing this question.

25   That case involved the pooling of the power of both the federal

1    and state governments into a single lawyer who acted on both

2    sovereigns' behalf.  Specifically, one lawyer, who worked as a

3    district attorney and a federal prosecutor in the life span of

4    a case.  And I'll highlight for Your Honor when the Court

5    analyzed the Bartkus exception in that case, it considered how

6    he was acting in the context of the state prosecution and then

7    how he acted in the context of the federal prosecution as well

8    because both of those sets of facts were relevant for

9    determining whether or not that federalism underpinning had

10   been undermined by the circumstances of the case.

11          In applying the Bartkus exception there, the

12   District Court held that the exception, quote:  Is best

13   understood and applied in a situation where the principles of

14   federalism are blurred and the power of centralized government

15   works to deprive a citizen of fundamental rights.  Any time

16   we're talking about the Bartkus exception, we are talking about

17   interpreting dicta from a Supreme Court decision from long ago;

18   and that's difficult for Your Honor, it's difficult for the

19   parties.  I submit that the most helpful construction of the

20   exception and how it actually operates is provided by this

21   Court that actually applied it to -- under real facts rather

22   than the imagined facts that the Bartkus court was working

23   with.

24          And so that sham and cover language that Your Honor

25   pointed to earlier I really don't think fully captures what

1   this exception is meant to address.  And, of course, they

2   couldn't anticipate, right, the various ways that state and

3   federal governments might work together and depart from our

4   sort of traditional federalism model.  But the Belcher

5   construction is really helpful for understanding how we might

6   actually apply that concept.

7           And the circumstances presented here are very similar

8   in key ways to what was presented in the Belcher case.  The

9   intricate involvement of both state and federal agencies and

10  prosecutors throughout the life of this case -- we could go on.

11  There was deep involvement by ATF, many resources thrown into

12  the investigation and the prosecution by that office.

13          But I think there are two critical and distinguishing

14  features that -- Your Honor may disagree, and I'm happy to talk

15  with you about why you disagree -- but I think they are

16  ultimately the distinguishing features that really compel

17  application of the exception in this context, the first being

18  that both in the 1997 trial and today we have prosecution teams

19  comprised of lawyer representatives from both the District

20  Attorney's Office and the United States Attorney's Office.  I

21  have not seen them cite to a single case where that dynamic

22  exists and where the Court declined to apply the Bartkus

23  exception.

24          Second, the decisions regarding forum, both in 1995

25  and now, today, those decisions were clearly, as a matter of

1   record, made jointly by representatives of the US Attorney's

2   Office and representatives of the District Attorney's Office,

3   who agreed when they made the decisions about forum that they

4   were both going to be represented by lawyers from their offices

5   in the course of those proceedings.  Those decisions about

6   personnel and dedicating valuable prosecutorial resources to

7   these prosecutions, those were made in the context of those

8   forum choices.  That is also very unique in this case.  Not a

9   single case cited by the Government deals with that type of

10  dynamic which is present here.

11          Your Honor, if the Government's exception of dual

12  sovereignty were correct in this case, then even following

13  today's prosecution now in Federal Court with lawyer

14  representatives from both the state and Federal Government --

15  let's say Mr. Brown is acquitted at trial.  Under their

16  conception, Your Honor, at that point they can simply go back

17  down the street -- the same players from both the state and

18  federal offices can simply then go back down the street after

19  this man has been acquitted in Federal Court and they can retry

20  him in state court because now it's a state prosecution.

21          THE COURT:  Well, isn't that what dual sovereignty is

22  all about?

23          MS. STERN:  Dual sovereignty is about a system of

24  federalism where state prosecutors prosecute cases in state

25  court and federal prosecutors prosecute cases in Federal Court,

1    not where they have it both ways and they together prosecute

2    people in their chosen forum, whichever forum suits them at the

3    moment.

4            THE COURT:  Unless in one case one sovereign is so

5    dominated, controlled or manipulated by the actions of the

6    other that it does not act of its own volition.  That's a

7    pretty high standard.

8            MS. STERN:  That's not the standard.  This standard

9    that -- and I don't envy Your Honor.  Your Honor is -- is --

10           THE COURT:  I didn't write that.  That came -- that

11   came from a Circuit decision.

12           MS. STERN:  I understand.  But the Circuit applying

13   that decision probably wasn't applying the Bartkus exception.

14   And there are different conceptions of what this exception --

15   what the contours of this exception are and how it should

16   apply.  There is a suggestion that it's:  Oh, one sovereign has

17   to be totally controlled by the other.  I don't understand why

18   that should be the standard when they are both acting as a

19   super-sovereign.  They're not acting as separate sovereigns.

20           THE COURT:  When you're on the Third Circuit, you can

21   write that.

22           MS. STERN:  Your Honor, it's all -- it's all dicta

23   unless the Court is applying it.  The only court that applied

24   this exception is the Belcher court.  And I understand

25   Your Honor doesn't have a Third Circuit opinion applying the

1    exception, and so we're in uncharted territory.

2             But all of the cases in which the Third Circuit has

3    analyzed this question, Berry, Piekarsky, they are plainly

4    distinguishable on the facts.  I understand Berry involved the

5    involvement of a Special United States Attorney, and that may

6    have been the case that Your Honor was referring to earlier.

7    The Third Circuit is not saying, you know, involvement by a

8    Special United States Attorney doesn't mean that we can't apply

9    the Bartkus exception, okay?  The specifics of that case were

10   the SAUSA involved in that case was involved in the

11   investigation of the criminal matter, then they ultimately

12   decided the state was going to prosecute that case.

13            So the state was prosecuting that case and who was

14   involved in the state prosecution?  A District Attorney -- an

15   Assistant District Attorney, okay?  Not the same SAUSA

16   attorney.  A different person who totally handled the

17   prosecution in state court on their own.  Okay?  That -- that

18   prosecution -- I believe in that case it ultimately resulted in

19   acquittal or for whatever reason the Federal Government was not

20   satisfied in the result and the SAUSA who had been involved in

21   the investigation of the matter opted to adopt the case for

22   federal prosecution.  Okay?

23            Key difference here is that SAUSA was not involved in

24   the original state court prosecution.  And that would be --

25   that's a clearly different set of facts.  That's what we have

1     here.  And, unfortunately, Your Honor can't know how the

2     Third Circuit would decide that question; but you have very

3     unique facts here, facts that haven't been explored in the

4     Third Circuit precedent on this question.  The facts here are

5     much stronger for applying the Bartkus exception than any of

6     the cases that have been cited by the Government.  And that's

7     because of this really unique use of these cross designation

8     teams in the context of both the prosecution then and today,

9     the joint decision making about forum and the use of those

10    cross designation teams.  And then also just the enormous

11    federal resources that went into the state matter and now the

12    very significant state resources that are being poured into

13    this federal matter.

14            If Your Honor has additional questions about specific

15    issues, I'm happy to address them, but that's really all I have

16    to present to the Court.

17            THE COURT:  I'll hear from the Government at this

18    time.

19            MS. WALKER:  Thank you, Your Honor.

20            THE COURT:  Miss Walker.

21            MS. WALKER:  I would note initially that it is, as we

22    agreed upon, the defense's burden to provide some prima facie

23    evidence, not just suppositions as to what happened, not some

24    interpretation of a note that occurred during a meeting, but it

25    is their burden to prove prima facie evidence that there was

1    some kind of a sham prosecution in the first trial or that my

2    presence here today is in some way controlling what the Federal

3    Government is doing today.  Frankly, I wish I had that kind of

4    authority or power; you get paid a lot more.

5              The defense relies very heavily on the Belcher case.

6    The Belcher case is very clearly distinguishable from what we

7    have here today.  I would note that it's also the only case in

8    my research that I could find where the Bartkus exception was

9    actually applied.

10             THE COURT:  In mine, too.  It was the -- the Belcher

11   case was the only case that I found where Bartkus was applied.

12             MS. WALKER:  Case after case after case notes that

13   this is an extremely narrow exception.  The Third Circuit

14   courts -- the Third Circuit has twice noted that while it has

15   recognized it, it has never actually applied the exception to

16   any case.

17             The Belcher case was a case in which the actual DA of

18   the county -- they refer to them as the District Attorney of

19   the county -- was, in fact, cross designated as a SAUSA in

20   general standards, so he had authority apparently to bring

21   cases to the Federal Courts to get them indicted.  He, in fact,

22   drafted the presentment -- or the indictment in that case.

23   He -- after having issues with the case in state court, he

24   drafted the indictment, he proposed the indictment to the

25   United States Attorney's Office, he offered to try the case.

1   He was very much involved in all of the decisions that were

2   being made.  The -- that simply isn't the case that you have

3   here today.

4          I don't have any problem admitting that there was

5   cooperation and joint decisions made between the two

6   governments throughout this prosecution.  But Bartkus has been

7   recognized as sanctioning that kind of cooperation.

8   Cooperation between District Attorney's Offices and United

9   States Attorney's Offices happen every day.  Cases are reviewed

10  often to determine which is the better sovereign to try the

11  case.  That is to avoid situations where you have trials in

12  both cases or in both sovereigns.

13         This is the type of common cooperation that has been

14  sanctioned by Bartkus and has been recognized as such.  The

15  Third Circuit has addressed the Bartkus exception; and although

16  they have not applied it, they have addressed it and they did

17  state the standard as finding it to have been a sham

18  prosecution.

19         THE COURT:  I'm sorry, you said the Third Circuit?  Is

20  that what you said?

21         MS. WALKER:  Yes, yes.  In Berry they -- and they used

22  the standard in evaluating whether the Bartkus exception

23  applied as to whether there was a sham prosecution.  They also

24  noted heavily the question of whether federal interests were

25  established in that case and found that there were.  The

1    federal interest and the state interest is the basis of the

2    dual sovereignty issue.

3            In Berry, that investigation started when an ADA who

4    was appointed as a SAUSA became aware of a federal cooperator,

5    so this was involvement of federal investigators as well.  The

6    investigator in that case was a state trooper who was cross

7    designated into a federal agency for purposes of a task force

8    of some sort.  They -- in Bartkus -- they noted that Bartkus

9    alluded to the possibility that the prosecutions can be barred

10   despite the dual sovereignty if it was a sham and a cover for a

11   federal prosecution.  Sham and a cover, that was the standard

12   that they used.

13           Time and again courts have rejected the notion that

14   the involvement of federal agents in the investigation amount

15   to federal involvement or federal control of a case or of a

16   state prosecution.  That happened in United States versus Bimps

17   (phonetically spelled), which was also a Third Circuit decision

18   from 2005.  You also have, in terms of the Third Circuit,

19   Piekarsky, in which they indicated again that the prosecution's

20   only run afoul of Bartkus if one authority is acting as a

21   surrogate for the other or the state prosecution was merely a

22   sham or a cover for a federal prosecution.

23           It also notes in Piekarsky that although there has

24   been cooperation with each other in conducting the

25   investigations and in sharing resources for interviewing

1    witnesses, that the -- that that is not sufficient to establish

2    the dual sovereignty as evaluated in that case.  Again, in

3    United States versus Roland, the Third Circuit used the phrase

4    the sham and a cover for the federal prosecution.

5            Going to the arguments that have been set forth,

6    trying to state that -- I guess addressing the first trial, the

7    trial in state court in 1997, there is a -- defense counsel

8    relies heavily on a press release that was issued by then

9    United States Attorney Hickton.  And Mr. Hickton indicated that

10   there had been cooperation from the time of the investigation,

11   which is true.  ATF, the city and the county as a team

12   investigated this fire.

13           THE COURT:  Which is not uncommon.

14           MS. WALKER:  Which is not uncommon.  And, frankly, if

15   dual sovereignty would be based on who investigated the crime,

16   you would never be able to have a case tried in both state and

17   Federal Court.  The outcome of that kind of a standard would be

18   really absurd.  Every time the state police brought a case, the

19   Federal Government would not be able to prosecute; or every

20   time a federal agency investigated --

21           THE COURT:  I think that would be fair.  I think the

22   defense is arguing, though, that that's just one component.

23           MS. WALKER:  It is, it is.  But to say that the ATF,

24   because they were part of the investigation, controlled the

25   state prosecution or that it would affect the dual sovereignty

1   is just not supported by any of the case law that is out there

2   where it indicates that the involvement of federal

3   investigators does not amount to a Bartkus exception for dual

4   sovereignty.

5        And with all due respect to Mr. Hickton's statement,

6   Mr. Hickton was not the United States Attorney at that time.

7   He was not in the room when any of these decisions were made

8   back in 1997.  The person that you heard from who was in the

9   room was Assistant District Attorney Michael Ahwesh.  You've

10  heard testimony from him at the last hearing, Your Honor,

11  wherein he stated the state prosecution was going forward.  It

12  went through an entire Grand Jury proceeding without any

13  federal involvement --

14       THE COURT:  What proceeding was that?

15       MS. WALKER:  Grand Jury proceeding, without any

16  involvement from the federal prosecutor's office.  Of course

17  ATF as part of the investigating team was involved.  Mr. Ahwesh

18  also noted that there was no discussion of federal prosecutors

19  being involved until after it was determined that charges were

20  going to be filed.  The presentment was issued from the Grand

21  Jury, which for state court purposes is the recommendation for

22  charging.  The complaints were filed by the City of Pittsburgh

23  Police Department.  And at one point Mr. Clark, who I imagine

24  was difficult to do, acknowledged that he lacked the expertise

25  and the knowledge to try an arson case of this magnitude and

1    involving the issues regarding the fire dynamics and the fire
2    science --
3              THE COURT:  Where was Mr. Raydoycis at the time?
4              MS. WALKER:  I believe that Mr. Raydoycis was in the
5    office at the time but was not -- I can't explain why he wasn't
6    chosen --
7              THE COURT:  Okay.  Mr. Raydoycis, for the record,
8    was -- I believe retired now.
9              MS. WALKER:  He just retired maybe less than a year
10   ago.
11             THE COURT:  -- was the Deputy Assistant District
12   Attorney that specialized in prosecution of arson cases I guess
13   based upon his experience as the fire book chief of the McKees
14   Rocks Voluntary Fire Department.
15             MS. WALKER:  Which he is still the chief of the McKees
16   Rocks Fire Department.
17             THE COURT:  As a Stowe Rocks resident, I was aware of
18   that.
19             MS. WALKER:  Mr. Clark, however, determined that he
20   didn't have the knowledge or the expertise to go forward on
21   this.  And discussion was had that Mr. Sweeney, who had
22   significant expertise in the area of arson prosecutions, would
23   be a good choice.  And that's when the decision was made, was
24   after charging, after the Grand Jury, after the presentment.
25   It was later in the process.  This wasn't the United States

1    Government controlling the state.  It was the state wanting to

2    put forth its best case and using someone with the knowledge to

3    do so.

4              That's supported, Your Honor, by the tasks that

5    Mr. Sweeney did during the trial.  The transcripts reveal that

6    the witnesses that he handled on the Commonwealth's

7    case-in-chief were all fire science and financial motives

8    related in terms of the testimony that he handled.  He also

9    handled the cross examination of the defense's fire expert.

10   That's because he had the knowledge and the expertise in

11   fire -- or in arson prosecutions that Mr. Clark lacked.  And

12   that is all supported by Mr. Ahwesh's testimony in that regard

13   as to why Mr. Sweeney was brought down.

14             The -- the lack of Government -- of the Federal

15   Government's control of the state prosecution is also borne out

16   by the testimony of Ms. Ramaley, a Deputy District Attorney,

17   Stephie Ramale, who testified that she handled the appeal

18   without any contribution at all from the United States

19   Attorney's Office.  The United States Attorney's Office was in

20   no way controlling or in no way was there a sham going on in

21   regards to the prosecution of Gregory Brown.

22             THE COURT:  So the conviction was affirmed by the

23   Superior Court?

24             MS. WALKER:  It was.  And I believe that the

25   Supreme Court denied allocatur at that point.

1          Miss Stern indicated that during the post-conviction

2     there was federal involvement of the attorneys.  None of that

3     is substantiated by the record.  There is nowhere in any of the

4     federal habeas where the United States Attorney asked any

5     questions or appeared on behalf of the Commonwealth or even any

6     indication that they were in the room other than when

7     Mr. Sweeney was called as a witness in the PCRA hearing.  He

8     testified as a witness, which is common in those proceedings.

9          The decisions that were made in regards to having me

10    appointed for the Special Assistant United States Attorney, the

11    part of the nol pros transcript that they don't cite to is the

12    part where I indicated on the record that the reason I was

13    being appointed was because we expected a quick trial and we

14    wanted to ensure that there was no violation of any speedy

15    trial rights.  That is stated very clearly in the nol pros

16    transcript if Your Honor would take a look at that.

17         THE COURT:  Just getting back one moment,

18    procedurally, so when the case came back from the Superior

19    Court, then subsequently a PCRA petition was filed.

20         MS. WALKER:  No.  Actually, Mr. Lindsay continued to

21    represent Mr. Brown from trial through appeal.  He forewent the

22    PCRA process and went directly to federal habeas corpus.

23         THE COURT:  Oh.

24         MS. WALKER:  So at that point it went to federal

25    habeas corpus.  The PCRA petition that resulted in the new

1    trial was filed significantly later.

2              THE COURT:  And who filed that?

3              MS. WALKER:  That was originally a pro se filing, as

4    most are, and then the Innocence Project entered their

5    appearance.

6              THE COURT:  And that's when the Court of Common Pleas

7    judge granted the petition.

8              MS. WALKER:  Correct.

9              THE COURT:  And what relief did he --

10             MS. WALKER:  He granted a new trial.

11             THE COURT:  A new trial.

12             MS. WALKER:  Yes.

13             THE COURT:  Okay.

14             MS. WALKER:  So, with that, I would submit to

15   Your Honor that the defense has not established anything other

16   than their suppositions from a few things that they've seen in

17   the record or seen in notes that there was any type of

18   collusion or that the prosecution that occurred in the 1997 --

19   that that entire two-week trial was a sham that was controlled

20   by the Federal Government.  There's nothing to support that in

21   the record.  There's nothing to support that the Commonwealth

22   is currently controlling this or that this is somehow a sham

23   prosecution at the behest of the Commonwealth of Pennsylvania.

24             As Your Honor noted, there are several cases that

25   indicate that the cross designation of attorneys is not

1    indicative of a Bartkus exception.  Just to cite one, I would

2    point to United States versus Safari, which is out of the

3    Fourth Circuit, I believe -- Fourth Circuit, yes.  I would also

4    note, Your Honor, that in terms of the Third Circuit law, there

5    is a case of United States versus -- and I'm not going to do

6    well with pronouncing the name -- Pungitore, P-U-N-G-I-T-O-R-E,

7    at 910 F.2d at 1084.  That is a very, very lengthy case wherein

8    there is a footnote at Footnote 20 where the Third Circuit

9    indicated that they -- well, initially, I should indicate that

10   the Third Circuit rejected the argument that the federal

11   involvement in a -- this was a RICO case, where several of the

12   underlying offenses had been tried in both New Jersey and in

13   Pennsylvania courts.

14         They rejected the argument of federal involvement

15   being so intimate that it was fundamentally unfair to allow the

16   federal prosecution to go forward.  However, in Footnote 20

17   they indicated that the degree of involvement standard using

18   that is really an unworkable standard.  In practice, they noted

19   a bright line test based on the identity of the sovereigns as

20   opposed to the degree of involvement may be what's necessary.

21   They didn't announce a standard, but they did give some insight

22   as to where they were going in terms of the Bartkus standard

23   that they would apply.

24         So, with that, I would submit that the dual

25   sovereignty in this case has been maintained, that both the

1    state and the Federal Government have had their own interests

2    represented, although with cooperation with one another.  It's

3    the type of cooperation that is common and that is sanctioned

4    under Bartkus.

5              Unless Your Honor has any questions --

6              THE COURT:  I do not.

7              MS. STERN:  Your Honor, may I reply briefly?

8              THE COURT:  Yes, you may.

9              MS. STERN:  There was quite a lot said.  I think maybe

10   some of it we'll address in our post-hearing briefing, and I'll

11   leave it for another day.  I just want to leave you with a few

12   thoughts first regarding this -- applying this sham and cover

13   standard in this case.

14             You know, I think in those other cases, okay, the

15   parties -- the party asserting the Bartkus exception was at a

16   disadvantage because they basically had to show that either a

17   state or federal prosecution, though having all of the

18   hallmarks of one of those prosecutions, was actually something

19   else.  Okay?

20             Here we don't have a cover.  It's plain as day.

21   They're both in Federal Court now before Your Honor, both the

22   state and federal prosecutor.  Okay?  So there's no cover at

23   all because they're both here.  And they're making it very

24   clear what's going on, that this is a joint federal and state

25   prosecution which just so happens to be brought in Federal

1   Court.  And the SAUSA designation is the only way to get a

2   Deputy District Attorney to be able to appear before Your Honor

3   in Federal Court.

4          THE COURT:  It sounds to me like you're trying to

5   create a new standard that's never been established in any

6   authority that I've read.  I mean -- I'm not saying your

7   argument is not logical or frivolous, but it's not any of the

8   standards that I read, and I read fifteen cases.

9          MS. STERN:  I'm happy to supply more support for my

10  argument about what the standard is.

11         THE COURT:  I don't think it's a question of more

12  support.  I think it's a question of what the law is.

13         MS. STERN:  There is definitely an open question about

14  what the law is in this regard.  But the Belcher court in

15  applying the exception did not apply a sham and cover

16  requirement.  They acknowledged that the attorney there was

17  acting in a super-sovereign capacity, and that's what we have

18  here.  Although, you know, I can work with that sham and cover

19  language if I need to; I just don't think that this Court is

20  that hamstrung by that dicta.

21         THE COURT:  There were -- I read a case or two where

22  it was -- the courts came close to arguing that there isn't

23  even an exception; that dual sovereignty is -- you know, is so

24  firm that there isn't even a Bartkus exception.  You've seen

25  that, some of that language.

1          MS. STERN:  We've seen that language, absolutely.

2     This is a very, very unique case.

3          THE COURT:  I don't disagree with that.

4          MS. STERN:  And so if it applies anywhere, it applies

5     in this case.  Second, the issue of burden, Your Honor.  There

6     was some argument about how we're just making argument based on

7     Steve Kaufman's notes and we haven't produced anything.  I just

8     want to emphasize what's gone on with respect to this claim.

9          We have taken what were public statements from both

10    the District Attorney's Office representatives and the US

11    Attorney's Office representatives, and we are determining what

12    we can from public statements from the policies of those

13    offices and trying to determine what has gone on here.  Our

14    efforts to obtain discovery on this question were met with

15    resistance.  We were not ultimately able to get any discovery

16    relating to these decisions back then and now today to

17    prosecute this case in the way they have.

18         And I submit it's fundamentally unfair for them to

19    come to court to make representations about the reasons why

20    that prosecution was done the way it was in 1997 and is now

21    being done today in the way it's being done while not also

22    affording us discovery on that question.

23         They point to the testimony from two of their

24    witnesses from the prior proceeding, Mr. Ahwesh and Miss

25    Ramaley, to say that Mr. Sweeney's involvement was really --

1    was really limited.  Those -- those witnesses didn't establish

2    that.  There's uncontroverted evidence that Mr. Sweeney

3    co-prosecuted this case at the key -- the key relevant period

4    of time for Your Honor to consider this issue, which is the

5    pretrial and the trial proceedings from 1997.  Who cares if his

6    name was just on the docket for the direct appeal?  It's

7    really -- it's really beside the point.  He tried this case in

8    state court, he's trying this case now again in Federal Court.

9         And, again, there were a number of other issues that I

10   would like to address in post-hearing briefing.  There was some

11   case citations I'm only hearing for the first time today; so

12   given that we've agreed to do post-hearing briefing, I'll

13   reserve the rest for that.  Thank you.

14        THE COURT:  All right.  Very well.  All right.  Then

15   I'll await your post-hearing briefing.  Thirty days we agreed

16   to?

17        MR. SWEENEY:  Yes, Your Honor.

18        Could I just ask one -- so that we're going to both be

19   submitting our findings of fact and conclusions of law at the

20   same time.  I don't know if the defense is prepared to commit

21   to this or not; but while we're preparing it, we would like to

22   know what their position is on which sovereign was controlling

23   the other one at given points in time.  Are you saying that the

24   Feds were controlling the state then and the state is

25   controlling the Feds now or what is your position?  Just so

1  that we can prepare a brief that's going to address this.

2          MS. STERN:  Your Honor, I propose that we file first

3  and then they could file a responsive brief and then we could

4  file a reply.

5          MR. SWEENEY:  That's fine with me.

6          THE COURT:  All right.  So then 30 days.

7          MS. STERN:  Yes, Your Honor.

8          THE COURT:  Then how much time thereafter?

9          MR. SWEENEY:  We can do it in two weeks, Your Honor.

10          THE COURT:  Okay.  Fifteen days, all right.  All

11  right.  Thank you.

12          ALL COUNSEL:  Thank you, Your Honor.

13          MS. STERN:  Excuse me.  I don't know if I formally

14  admitted or moved for the admission of the documents I

15  submitted, but I make that motion.

16          THE COURT:  Okay.

17          MS. STERN:  I apologize.

18          THE COURT:  Your motion is granted.

19          MS. STERN:  Thank you.

20      (Whereupon, the hearing was concluded.)

21                    C E R T I F I C A T E
   I, Shirley Ann Hall, certify that the foregoing is a correct
22  transcript for the record of proceedings in the above-titled
   matter.

23

24                          s/Shirley Ann Hall
                            Shirley Ann Hall, RDR, CRR
25                          Official Court Reporter