IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 16-235 |
| | ) |
| GREGORY BROWN, JR. | ) |

**GREGORY BROWN, JR'S RESPONSE TO GOVERNMENT'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS
OF LAW REGARDING DUAL SOVEREIGNTY DOCTRINE**

AND NOW, comes the defendant, Gregory Brown, Jr., through his counsel, David B. Fawcett and First Assistant Michael J. Novara, and respectfully files this response to the government's proposed findings of fact and conclusions of law regarding the dual sovereignty doctrine (Doc. No. 99).

**A. The prosecution offers no authority in which a court declined to apply the *Bartkus* exception under circumstances similar to those presented here.**

While the prosecution has at all times highlighted the dearth of authority in which the *Bartkus* exception has been applied, it still has not identified a single case involving circumstances similar to those presented here – namely, the employment of teams of state and federal prosecutors, jointly prosecuting the case in state and federal sovereignties through use of cross-designation procedures. *See* Doc. No. 99. There simply is no binding authority requiring this Court to reject Mr. Brown's invocation of the *Bartkus* exception and instead apply the dual sovereignty doctrine under these unique circumstances.

The *Bartkus* dicta should be relied upon as a guiding principle, rather than a strict legal rule, since it is not a holding but a rationale to support the common

sense notion that a change in forum does not necessarily and inflexibly defeat an individual's right to protection from a second prosecution.  Here, the prosecution, relying on three factually distinguishable decisions from the Third Circuit Court of Appeals, argues that the *Bartkus* dicta provides a legal standard to be applied in all cases (Doc. No. 99 at 5-8). Two of the Third Circuit decisions were addressed by Mr. Brown in his Proposed Findings of Fact and Conclusions of Law, *United States v. Piekarsky*, 687 F.3d 134, 149 (3d Cir. 2012) and *United States v. Berry*, 164 F.3d 844 (3d Cir. 1999). *See* Doc. No. 98 at 17-19.  Analysis of *Piekarsky* and *Berry* demonstrates the limited guidance provided by Third Circuit for application of the *Bartkus* exception in this case.  In both cases, the Court refused to apply the *Bartkus* exception, but under circumstances readily distinguishable from the circumstances presented here, and with the Court expressly declining to craft any rule for application of the doctrine in future cases. *See* Doc. No. 98 at 17-19.  The government does not respond to these arguments, but rather cites the cases to show that the Court of Appeals has defined the contours of the *Bartkus* exception by the dicta routinely cited. Doc. No. 99 at 5-8.

  While acknowledging that the *Bartkus* exception does not and cannot apply in every case involving federal and state cooperation, Mr. Brown's contention is that the exception, if it exists, must apply in this case – where the sovereigns are employing hybrid prosecution teams in both state and federal forums while simultaneously claiming the privilege afforded "separate sovereigns." The

prosecution cites no case in which the dual sovereignty doctrine was applied to defeat a double jeopardy claim on these or remotely similar facts.

The prosecution attempts to undermine Mr. Brown's argument by claiming that he is inviting this Court to "create a new standard of law," but fails to acknowledge the weakness of its attempt to define the contours of an exception by decisions in which the exception was not applied.  The prosecution's effort to divine a rule binding on this Court from inapposite Third Circuit decisions fares no better with the addition of the third case, *United States v. Pungitore*, 910 F.2d 1084 (3d Cir. 1990).  Like *Berry* and *Piekarsky*, *Pungitore* is readily distinguishable on its facts – defendants there could "not point[ ] to anything in the record to substantiate their claim that federal authorities had any involvement in the [prior state court] murder trials," and consequently, their double jeopardy arguments failed. *Pungitore*, 910 F.2d at 1106-07.  Here, the record involvement of both federal and state prosecutors in co-prosecuting this case in state court, and now in federal court, is undisputed.

The prosecution quotes a footnote in *Pungitore* (which is again, only more dicta) to suggest that the Court of Appeals might be in favor of "a bright line test based on the identity of the prosecuting sovereigns," but it is not clear that argument helps the prosecution. The prosecution assumes that "identity of the prosecuting sovereign" is defined solely by reference to the case caption.  Such a formal approach makes little sense when state and federal prosecutors are appearing in each other's sovereignties through the cross-designation process.  They

wear the "hat" of their special designation only as a means to appear in court at the joint request and agreement of *both* sovereignties, all the while collecting their salaries and owing their loyalty to the sovereign that employs them.

In any event, the Third Circuit opted not to craft a rule for application of the exception in *Pungitore* – bright line or not – because the case presented "no factual predicate for applying an exception to the dual sovereignty doctrine on the basis of federal-state cooperation," and "thus, [the Court had] no reason to make a definitive determination of whether there is any qualification on the doctrine." *Pungitore*, 910 F.2d at 1107 n.20. The prosecution's reliance on *Pungitore* is puzzling because the Court could not have been clearer that it was not delineating the contours of an exception to the dual sovereignty doctrine in cases involving federal-state cooperation; the case simply did not present a proper vehicle for answering that question.

   B. **This Court should decline to consider the prosecution's stated reasons for the cross-designations where Mr. Brown has not been afforded discovery on this issue notwithstanding the prosecution's waiver of any applicable privilege.**

Mr. Brown argues that the sovereigns have here employed cross-designation as a means of pooling their prosecutorial resources and extending their control in this case beyond their respective sovereignties. Doc. No. 98 at 16-17, 19. In a continuing attempt to distance itself from the public statements of the former U.S. Attorney David Hickton concerning the joint state and federal decisions regarding forum and enlistment of joint prosecution teams (*see* Exhibit AA), the prosecution insists that there were other reasons for the cross-designations employed here going

beyond the desire to pool their resources and exercise continued joint prosecutorial authority. *See* Doc. No. 99 at 1-2, 4, 9. Even assuming *arguendo* that the prosecutors' subjective reasons for agreeing to the cross-designations matter for purposes of analyzing the dual sovereignty question,[1] the factual dispute concerning the reasons for the cross-designations must be resolved in Mr. Brown's favor where the prosecution has both generated a factual dispute concerning the reasons for the cross-designations while simultaneously claiming privilege concerning the same.

Specifically, to show that Shaun Sweeney was cross-designated as a Special Assistant District Attorney because of his "experience in arson," and that Rebecca Walker is now designated as Special Assistant United States Attorney to help Shaun Sweeney try this case in federal court as quickly as possible, the government relies on statements of former and current Assistant District Attorneys. *See* Doc. No. 99 at 2, 4, 9. At the hearing on Mr. Brown's motion to dismiss, the government offered the testimony of Assistant District Attorneys Michael Ahwesh and Stephanie Ramaley concerning the reasons for and the scope of AUSA Shaun Sweeney's involvement in the prior prosecution in state court. The prosecution predictably cites their testimony, and now Rebecca Walker's prior claims in the context of the *nolle pros* hearing in state court, in support of its arguments that the dual sovereignty doctrine defeats Mr. Brown's double jeopardy claim. *Id.* This Court should decline the prosecution's invitation to rely on the statements of

---

[1] The prosecution offers no authority to suggest that the reasons for the cross-designation have any bearing on the analysis.

prosecutors concerning the reasons for the cross-designations because the prosecution has invoked privilege to prevent discovery on that very issue.

A brief recitation of the procedural history of this case is necessary. This Court will recall that following the hearing in which Mr. Awesh and Ms. Ramaley were called to testify, Mr. Brown requested the issuance of a subpoena duces tecum specifically sought "communications and documents" concerning the "reasons and justification for" Shaun Sweeney's involvement in the 1997 state court trial, and "communications and documents seeking authorization or otherwise related in any way to the decision to have" Rebecca Walker participate in the federal prosecution. Doc. No. 62 at 8-9. This motion was made specifically due to the factual dispute created by the testimony offered by the government at the hearing. Doc. No. 62 at 5 ("Given the position now taken by the government, Mr. Brown seeks to subpoena records of the Department of Justice, U.S. Attorney's Office for the Western District of Pennsylvania, and the Allegheny County District Attorney regarding the coordinated efforts of the state and federal prosecution, as these records have clear relevance to his motion to dismiss."). This Court granted the request, and both the U.S. Attorney's Office and the Allegheny County District Attorney's Office swiftly moved to quash the subpoenas. Doc. Nos. 64, 66.

In an April 24, 2018, Memorandum Order, this Court denied the motions to quash, noting that it was "loath to rule on [Mr.] Brown's motion to dismiss until he has had a full and fair chance to litigate all of the issues, including Double Jeopardy and dual sovereignty," and thus "permitt[ing] him to proceed with his intended

6

discovery subject to the Government objecting to the merits of specific requests." Doc. No. 70 at 4.

When it came time to produce documents, the U.S. Attorney's Office produced little more than a privilege log. The District Attorney's Office produced nothing. Mr. Brown moved to compel the production of responsive documents. Doc. No. 72. The U.S. Attorney's office claimed that the responsive documents were privileged (Doc. No. 76 at 8-17), but not before insisting that the documents were not even relevant because the Court need not reach the dual sovereignty issue at all. Doc. No. 76 at 5-7 ("**Information supposedly relevant to Defendant's dual sovereignty arguments**, meanwhile, necessarily **is of no moment** if, as is now clearly the case, the Double Jeopardy Clause itself does not apply" (emphasis added)).

Mr. Brown argued in response that the prosecution had waived any applicable privilege concerning the subject of the employment of joint prosecution teams in this case "by . . . invo[king the] dual sovereignty doctrine, and specifically by offering the testimony concerning why AUSA Sweeney assisted in the state prosecution . . . Representations were also made about ADA Walker's involvement in this litigation." Doc. No. 79 at 13-14.[2] This Court avoided questions of privilege and waiver entirely, denying Mr. Brown's motion to compel on the grounds suggested by the government – that the requests pertained to the dual sovereignty

---

[2] Mr. Brown's arguments in his Reply to Government's Response to Gregory Brown's Motion to Compel Discovery Or, In the Alternative, For In Camera Inspection concerning waiver of any applicable privilege are hereby incorporated by reference. *See* Doc. No. 79.

7

doctrine, rather than the question of whether the instant prosecution is a second jeopardy.  Doc. No. 83 at 4-5.

This Court has since signaled its intention to rule on the dual sovereignty question as a threshold matter. Mr. Brown is still without discovery – still without his "full and fair" opportunity to litigate the dual sovereignty issue due to the prosecution's invocation of privilege.  Meanwhile, the prosecution selectively offers otherwise privileged information to defeat Mr. Brown's constitutional claim.  The prosecution has placed this Court in a difficult position – proffering select statements concerning the reasons for the cross-designations, while claiming privilege to protect documents concerning that very subject from discovery.

This Court could avoid the issue entirely by declining to rely on the government's proffered testimony and other statements on this subject, due to the unfairness of denying Mr. Brown discovery on those same issue.  Alternatively, this Court could vacate its prior order denying Mr. Brown's motion to compel discovery on this issue, and grant Mr. Brown's motion to compel, or review the documents *in camera* before determining whether they are privileged.  In any event, this Court should not rely on the prosecution's stated reasons for the cross-designations in this case because Mr. Brown has been denied a full and fair opportunity to litigate that issue.

WHEREFORE, for the reasons set forth above, and in Mr. Brown's filings at Doc. Nos. 41, 55, 89, 98, this Court should decline to apply the dual sovereignty

8

doctrine in this instance, and find that this prosecution constitutes an unconstitutional second jeopardy in violation of the Double Jeopardy Clause.

Respectfully submitted,

*/s/ David B. Fawcett*
David B. Fawcett, Esq.
Pa. Attorney I.D. No. 44494
Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222-2716


*/s/ Michael J. Novara*
Michael J. Novara
First Assistant Federal Public Defender
Pa. Attorney I.D. No. 66434

*/s/ Samantha L. Stern*
Samantha L. Stern
Assistant Federal Public Defender
N.Y. Attorney I.D. No. 5025663