IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 2:16cr235 |
| | ) | **Electronic Filing** |
| **GREGORY BROWN, JR.** | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

March 20, 2020

**I.    INTRODUCTION**

On or about November 1, 2016, a Federal Grand Jury returned a one-count indictment against Defendant, Gregory Brown, Jr. ("Brown" or "Defendant"), charging him with Malicious Destruction of Property by Fire Resulting in Death in violation of Title 18 United States Code Section 844(i). Brown has filed a Motion to Dismiss Indictment (**Document No. 41**) pursuant to the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.  The Government has responded, arguing that under the doctrine of dual sovereignty, a state prosecution does not bar a subsequent federal prosecution for the same conduct. *United States v. Gricco*, 277 F.3d 339, 352 (3d Cir. 2002) (citing *Abbate v. United States*, 359 U.S. 187, 194 (1959); *Bartkus v. Illinois*, 359 U.S. 121, 137 (1959); *United States v. Lanza*, 260 U.S. 377, 382 (1922)). As set forth below, the Court finds that dual sovereignty is applicable here and the motion to dismiss will be denied.

**II.    FINDINGS OF FACT**

1.    At approximately 12:22 a.m., on February 14, 1995, firefighters responded to a house fire at 8361 Bricelyn Street in the Homewood section of the city of Pittsburgh. *Commonwealth v. Brown*, 2015 Pa. Super. Unpub. LEXIS 578, *1-2, (Pa. Super. March 20, 2015).

2.       Occupants of the house, which had been rented by Brown's mother, Darlene Buckner ("Darlene"), in 1990, included Brown, Darlene, Ronald Buckner ("Ronald" together the "Buckners"), Darlene's husband, the Buckners' two-year old son Fred, Ronald's daughter Catherine Buckner, and Catherine's one-year old daughter Cynthia. Defendants' Motion to Dismiss ("Def. Mtn. Dismiss") ¶ 2.

3.       In the course of fighting the fire, six firefighters entered the home, and three of those firefighters, Thomas Brooks, Patricia Conroy, and Mark Kolenda, died after becoming trapped in the basement area of the home after a stairway collapsed. *Id.*

4.       Agent William Petraitis ("Petraitis"), a Certified Fire Investigator with the Bureau of Alcohol, Tobacco, and Firearms ("ATF") and other investigators determined that the fire originated in the basement and, based upon burn patterns, the investigators believed an accelerant was used to start the fire. Def. Mtn. Supp. ¶ 9.

5.       The federal government devoted resources to the investigation including: ATF agents; chemical testing facilities; equipment; lab personnel; expert witnesses; and a federal reward fund. Defendants' Proposed Findings of Fact ("Def. PFF") ¶ 1.

6.       In early 1996, the investigation of this case was submitted to the Allegheny County Grand Jury by Assistant District Attorneys Michael Ahwesh ("ADA Awesh") and Marc Clark ("ADA Clark"). Government Proposed Findings of Fact ("Govt. PFF") ¶¶ 1 & 2.

7.       Brown and Buckner were charged in the Allegheny County Court of Common Pleas with second-degree murder, arson, insurance fraud and related offenses. Def. Mtn. Dismiss ¶ 21.

8.       Thereafter, ADAs Ahwesh and Clark had a discussion with then District Attorney Robert Colville ("DA Colville") regarding the idea of bringing Assistant United States Attorney Shaun Sweeney ("AUSA Sweeney")onto the prosecution team to assist in trying Brown and Buckner because: (1) ADA Ahwesh was responsible for other cases in the midst of the grand jury process; and

(2) AUSA Sweeney had experience in trying arson cases, but ADA Clark did not have that type of experience. Govt. PFF ¶¶ 7 & 8.

9.      The U.S. Attorney for the Western District of Pennsylvania and the Allegheny County District Attorney authorized the cross-designation of AUSA Sweeney for purposes of prosecuting Brown and Buckner in state court. Def. PFF ¶ 1.

10.     The state jury trial was conducted from January 31, 1997 through February 21, 1997.  AUSA Sweeney and ADA Clark shared the trial duties.  During the trial, AUSA Sweeney (1) participated in voir dire and jury selection; (2) attended the pre-trial conferences and presented argument regarding evidentiary issues, jury instructions and the required elements of the charges; (3) called and examined witnesses; and (4) presented the prosecution's closing argument to the jury. Govt. PFF ¶ 10; Def. PFF ¶ 1.

11.     Brown was convicted of three counts of second degree murder, two counts of arson, and one count of insurance fraud. The court sentenced him to three consecutive life sentences for the murders, and consecutive sentences of 5-10 years' incarceration and 2 1/2-5 years' imprisonment on the arson counts. *Commonwealth v. Brown*, 2015 Pa. Super. Unpub. LEXIS 578 at *4.

12.     AUSA Sweeney participated in oral argument of post-trial motions, but neither he nor anyone else from the United States Attorney's office, was involved in the appellate work on the state court case. Def. PFF ¶ 1; Govt. PFF ¶ 11.

13.     On February 19, 2014, the Court of Common Pleas granted Brown's PCRA petition and ordered a new trial. The prosecution appealed the decision, and the Superior Court affirmed the decision of the Court of Common Pleas. Def. PFF ¶ 2.

14.     Following remand, the Commonwealth filed a Motion to Recuse Court of Common Pleas Judge Joseph Williams, who had presided over all of the PCRA proceedings.

Judge Williams denied the Motion to Recuse on November 18, 2015.  Def. Mtn. Dismiss ¶ 58;

Government. Response ("Govt. Resp.") to Mtn. Dismiss p. 12.

15.     First Assistant District Attorney Rebecca Spangler ("FADA Spangler")

represented the Commonwealth for the presentation of the motion, which was denied. Govt. PFF

¶ 18. The Commonwealth appealed, and the Superior Court affirmed the denial of the

Commonwealth's Motion to Recuse on August 9, 2016. Def. Mtn. Dismiss ¶ 61.

16.     The case was again remanded to the Court of Common Pleas, a schedule was set

for filing of dispositive motions and a new trial was scheduled to begin on January 4, 2017. Def.

Mtn. Dismiss ¶ 62.

17.     The case was scheduled for trial and in accord with the schedule set for the filing

of dispositive motions, Brown moved to dismiss the charges based upon double jeopardy. Def.

Mtn. Dismiss ¶ 63.   The Commonwealth was represented by Deputy District Attorney Rebecca

Walker ("DDA Walker"). Govt. PFF ¶ 19.

18.     On November 1, 2016, a federal grand jury indicted Brown in the instant action,

charging him with destruction of property by fire resulting in death, under 18 U.S.C. § 844(i), in

connection with the same fire that was the subject of the state court prosecution. Def. Mtn.

Dismiss ¶ 65; Govt. Resp. to Mtn. Dismiss p. 12.

19.     On November 4, 2016, the Commonwealth filed a Motion for *nolle prosequi* to

dismiss the state charges, and such charges were dismissed on November 16, 2016.  Def. Mtn.

Dismiss ¶ 66; Govt. Resp. to Mtn. Dismiss p. 12; Govt. PFF ¶ 19.

20.     DDA Walker was appointed as Special Assistant United States Attorney for

purposes of prosecuting  Brown in federal court. Def. PFF ¶ 3, Govt, PFF ¶ 20.

III.    CONCLUSIONS OF LAW

1.      The Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Amendment was designed to "protect[] against both successive prosecutions and successive punishments for the same criminal offense." *Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 800 (1994).

2.      It is also well established that the Double Jeopardy Clause's "general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988) (citations omitted).

3.      The prosecution therefore is free to retry a defendant where the conviction is reversed due to "trial error" such as "incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct." *Burks v. United States*, 437 U.S. 1, 15 (1978).

4.      Under the doctrine of Dual Sovereignty, a state prosecution does not bar a subsequent federal prosecution for the same conduct. *United States v. Gricco*, 277 F.3d 339, 352 (3d Cir. 2002) (citing *Abbate v. United States*, 359 U.S. 187, 194 (1959); *Bartkus v. Illinois*, 359 U.S. 121, 137 (1959); *United States v. Lanza*, 260 U.S. 377, 382 (1922)).

5.      The doctrine, articulated by the Supreme Court in *Bartkus v. Illinois* and *Abbate v. United States*, is a recognition of the fact that the states and the federal government are separate sovereigns, with distinct interests in criminalizing and prosecuting certain conduct. *See United States v. Piekarsky*, 687 F.3d 134, 149 (3d Cir. 2012).

6.      The "dual sovereignty" principle is equally applicable whether the first prosecution results in acquittal, *Bartkus v. Illinois*, 359 U.S. 121 (1959), or conviction,  *Abbate v.*

*United States*, 359 U.S. 187 (1959).  S*ee also United States v. Wheeler*, 435 U.S. 313, 320 (1978).

7.    The dual sovereignty doctrine "rests on the premise that, where both sovereigns legitimately claim a strong interest in penalizing the same behavior, they have concurrent jurisdiction to vindicate those interests and neither need yield to the other." *United States v. Pungitore*, 910 F.2d 1084, 1105 (3d Cir.), *reh'g denied*, (Sept. 10, 1990).

8.    In *Bartkus*, the Supreme Court found successive state and federal prosecutions constitutionally permissible, but noted that successive prosecutions might run afoul of the general rule if one authority acts as a surrogate for the other, or if the state prosecution serves merely as "a sham and a cover for the federal prosecution." *Id.* at 123. In such a scenario, the *Bartkus* Court opined that a successive prosecution may prove constitutionally impermissible if it renders the earlier state prosecution, in essence, "another federal prosecution," thereby enabling federal authorities to "avoid[] the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal." *Id*. at 123-124.

9.    To the extent that the federal courts of appeals have recognized the *Bartkus* exception, they have construed it narrowly. *U.S. v. Guzman*, 85 F.3d 823, 827 (2d Cir. 1996).

10.    Moreover, since *Bartkus* was decided in 1959, there appears to be only one reported federal case that has ever applied the exception to bar successive prosecutions by separate sovereigns, *see United States v. Belcher*, 762 F. Supp. 666, 670-71 (W.D. Va. 1991), which has led some courts to question whether the exception is simply narrow or whether it exists at all. *See, e.g., United States v. Djoumessi*, 538 F.3d 547, 550 (6th Cir. 2008) ("'Since Bartkus was decided in 1959, this Circuit has never ruled that a prosecution violated double jeopardy protections [under [*Bartkus'*] "sham prosecution" theory.' . . . As this track record suggests, there is some room for debate over whether the *Bartkus* exception is just narrow or

whether it is indeed real."); *Angleton*, 314 F.3d at 773-74 ("The *Bartkus* Court's failure to identify a particular instance of a sham prosecution may mean that the exception does not exist."); *United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir. 1993) ("We have questioned whether *Bartkus* truly meant to create [a 'sham prosecution'] exception, and we have uniformly rejected such claims.").

11.     Though the Court of Appeals for the Third Circuit has "recognized the potential existence" of a *Bartkus* exception, it has "never applied the exception to overturn a second state or federal prosecution." *United States v. Berry*, 164 F.3d 844, 847 n. 3 (3d Cir. 1999) (noting that at least one circuit has questioned whether the Supreme Court "even intended to create an exception in *Bartkus"*) (citation omitted); *see also United States v. Piekarsky*, 687 F.3d at 149 (same).

12.     Consequently, to the extent the *Bartkus* exception narrowly applies in this Circuit, *see U.S. v. Atl. States Cast Iron Pipe Co.*, No. 03-852, 2005 U.S. Dist. LEXIS 19563, 2005 WL 2138701, at *4 (D.N.J. Aug. 31, 2005), it is limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition. *See United States v. Perry*, 79 F. Supp. 3d 524, 529-530 (D. N.J. 2015) (citing *U.S. v. Dowdell*, 595 F.3d 50, 63 (1st Cir. 2010); *U.S. v. Guzman*, 85 F.3d at 827)). In that regard, the "essential element of the *Bartkus* exception is a high level of control: one sovereign must (1) have the ability to control the prosecution of the other and (2) it must exert this control to essentially manipulate[ ] another sovereign into prosecuting." *Id.* (citing *U.S. v. Moore*, 370 F. App'x 559, 561 (5th Cir. 2010)).

13.     This standard is not satisfied by mere cooperation between federal and state authorities, even when that cooperation is significant. *See Bartkus v. United States*, 359 U.S. at 123-124, 165 (concluding that state prosecution was not a sham, even though the record showed,

as Justice Brennan noted in his dissent, that "federal officers [had] solicited the state indictment, arranged to assure the attendance of key witnesses, unearthed additional evidence to discredit *Bartkus* and one of his alibi witnesses, and in general prepared and guided the state prosecution"); *United States v. Zone*, 403 F.3d 1101, 1103, 1105 (9th Cir. 2005) (per curiam) (concluding that formation of joint task force consisting of state and federal prosecutors and law enforcement officials who investigated defendant's activities was insufficient to show that defendant's state prosecution was a sham under *Bartkus*); *Angleton*, 314 F.3d at 770, 774 (rejecting claim that federal prosecution was a sham under *Bartkus*, even though state prosecutors asked federal authorities to investigate defendant for murder, a joint task force of federal and state law enforcement officials was then formed to investigate the murder, the task force received all evidence gathered during defendant's earlier state prosecution for the same murder, three state investigators on the task force were deputized as United States Marshals, and the two assistant district attorneys who prosecuted defendant in state court assisted the task force); *United States v. Friedberg*, 766 F. Supp. 87, 89 (E.D.N.Y. 1991) (rejecting claim that defendants' federal prosecution was a sham, even though defendants' activities were investigated by a joint task force consisting of federal and state prosecutors and law enforcement officials).

14.     Further, the cross-designation of a state prosecutor as a Special Assistant United States Attorney to assist or even conduct a federal prosecution, without more, is not indicative of a sham prosecution. *See United States v. All Assets of G.P.S. Auto. Corp.*, 66 F.3d 483, 495 (2d Cir. 1995) ("[E]very circuit to consider the issue has also held that the cross-designation of a state district attorney as a federal official to assist or even to conduct a federal prosecution does not by itself bring a case within the *Bartkus* exception[.]"); *United States v. Figueroa-Soto*, 938 F.2d 1015, 1019 (9th Cir. 1991) ("The designation of [the state attorney as a Special Assistant United States Attorney] did not convert him into a federal official for all purposes. He could

wear two hats. His primary role in the state prosecution as the state prosecutor was not affected by a federal status that became significant only when he took on the federal prosecution of [the defendant].”); *United States v. Paiz*, 905 F.2d 1014, 1024 (7th Cir. 1990) (concluding that designation of state prosecutor as a Special Deputy United States Attorney for purposes of the defendant's federal prosecution did not invoke *Bartkus* exception).

15.     Brown argues that his case falls within an exception to the dual sovereignty doctrine because of the case's “unique procedural history,” specifically, “the record involvement of both state and federal agents and prosecutors acting together and pooling their resources in both prosecutions at issue, thereby defeating the traditional state and federal separation justifying application of that doctrine.”  In support Brown directs this Court to *United States v. Belcher*, 762 F.Supp. 666 (W.D. Va. 1991), in which the court applied the *Bartkus* exception to bar a federal prosecution that followed a state prosecution for the same conduct.

16.     The *Belcher* Court concluded  that the sketchy provisions *Bartkus* announced (one sovereign acting as a tool of the other; one prosecution serving as a sham or cover for another) are best understood and applied in a situation where the principles of federalism are blurred and “the power of centralized government” works to deprive a citizen of fundamental rights. *United States v. Belcher*, 762 F. Supp. at 670.

The prosecutor in *Belcher*, Tim McAfee (“McAfee”) was the Commonwealth's Attorney for Wise County, Virginia as well as a Special Assistant United States Attorney for the Western District of Virginia. During 1988 and 1989, McAfee, as Commonwealth's Attorney, unsuccessfully prosecuted the Defendants in the Circuit Court of Wise County, Virginia. McAfee, in his federal capacity, drafted a three-count indictment against Defendants and a federal grand jury returned the indictment.

The Court found the power McAfee possessed inconsistent with the concepts of federalism implicit in the Constitution:

> [The notion of dual sovereignty] rests on the basic structure of our federal system, in which States and the National Government are separate political communities. State and Federal Governments '[derive] power from different sources,' each from the organic law that established it. . . . Each has the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses, and in doing so each 'is exercising its own sovereignty, not that of the other.'

*United States v. Belcher*, 762 F. Supp. at 671 (quoting *United States v. Wheeler*, 435 U.S. 313, 320, 55 L. Ed. 2d 303, 98 S. Ct. 1079 (1978) (citations omitted)). The Court reasoned that if the same prosecutor simultaneously derived power from both a State and the federal government, then the whole underpinning of federalism was destroyed. The fact that the two sovereigns have essentially pooled their powers in one prosecutor strongly suggests to the court that in reality there are no longer two sovereigns at work. Instead, the pooling of prosecutorial power effectively creates one "super sovereign," i.e., a unitary government. Thus, a central government is actually at work here, not a federal government. *Id.*

Accordingly the Court found that "[g]iven the extreme emphasis on federalism in *Bartkus* and the apparent breakdown of federalism here, the court is forced to conclude and does find that, by the very nature of the powers McAfee possesses, this second prosecution of the defendant is simply "a sham and a cover" for the first, unsuccessful prosecution in a Virginia court. Since a second prosecution of defendant in Virginia is forbidden by principles of collateral estoppel, likewise this prosecution is prohibited." *Id.*

17.     This Court, however, does not find the unique factual scenario of *Belcher*.  In this instance there is clear cooperation between federal and state authorities, that even if such cooperation is significant, does not meet the standard necessary to apply the *Bartkus* exception to bar the federal prosecution.

18.    Moreover, this Court is unable to find in this instance that "one sovereign so thoroughly dominate[d] or manipulate[d] the prosecutorial machinery of another that the latter retain[ed] little or no volition." *See United States v. Perry*, 79 F. Supp. 3d at 529-530. Accordingly, the Court shall deny Browns motion to dismiss.  An appropriate Order follows.

Cercone, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 2:16cr235 |
| | ) | **Electronic Filing** |
| **GREGORY BROWN, JR.** | ) | |

## <u>Order of Court</u>

AND NOW, this 20th day of March, 2020, upon c0nsideration of the Motion to Dismiss

Indictment (**Document No. 41**) filed on behalf of Defendant, Gregory Brown, Jr., the

Government's response thereto, the Proposed Findings and Conclusions filed in support thereof,

and pursuant to the Court's Findings and Conclusions filed herewith,

IT IS HEREBY ORDERED that the motion to dismiss is **DENIED**.


<u>s/ David Stewart Cercone</u>
David Stewart Cercone
United States District Judge

cc:   Shawn E. Sweeney, AUSA
Michael J. Novara, AFPD
David B. Fawcett , III, Esquire
Samantha L. Stern, AFPD

(*Via CM/ECF Electronic Mail*)